Thank you both for your arguments today, and we'll proceed to the last case on today's oral argument calendar, which is Cheng v. Speier. Good morning, Your Honors. Mark Javich from Javich Law Office on behalf of the plaintiff, Clyde Cheng. Thank you for hearing this case, Your Honor. The parties have largely talked past one another in this case, which is why it's likely that it was premature to dismiss at the pleading stage. Was this case about official business of town halls, or was this case about unreasonable marketing activities to people that the Congresswoman wanted to attend the town halls through robocalls placed to consumers without consent and then refusing to stop robocalling once the consumer sent a letter asking to be stopped robocalling and noting that he had never signed up to be robocalled? But the problem here is that the lower court entirely skipped the analysis of whether the specific conduct of this case was within the scope of employment and merely dismissed the case based on the notion that official town halls are official business of the United States and that the United States could question or could substitute in for the defendant no matter what the activity was related to conducting the official business of town halls. But, of course, this assertion plaintiff challenged and did not receive a hearing on. The specific conduct violated the Telephone Consumer Protection Act, and that was not disputed at all. The argument at the lower court was that the law does not apply to an employee of the government as long as it is related to town halls. But such a finding required a holding that required a determination of agency principles under two state laws, both in California and the District of Columbia. And the court decided this issue without even addressing whether California law or the District of Columbia law applied. And further, deciding agency principles at the pleading stage is almost never permitted because it's well established that they should be decided by the jury. Now, the government argues that the congresswoman was required to make robocalls by virtue of her position. Well, clearly she was entitled to hold town halls, but it was not mandatory for her to use unreasonable marketing efforts to promote those town halls. And her activity was entirely discretionary in how to conduct the town halls. Under the government's proposed rule, it would create a type of diplomatic immunity where any law in the course of conducting a town hall would not be required to be followed. So would the congresswoman be able to send invitations in the mail, depositing them into United States Postal Receptacles without proper postage or with failing to pay the postage? What if one of her staffs got caught for speeding? I think congresswomen have franking privileges, so that doesn't really work. Oh, thank you, Your Honor. But let's say she books a hotel venue and doesn't pay and gets sued for breach of contract or any other violation, then she would be subject to having to pay in court. So the congresswoman is no longer in office, is that right? Yes, I believe that's correct, Your Honor. Okay, so you have a claim here for injunctive relief, is that now moot? Well, I would think she's no longer – there's no risk. At the time it was filed, there was such a risk, but to Your Honor's point, I agree that it's moot now. I mean, unless she is in some other business that we're not familiar with, but that's – yes, it appears to be moot. So now the court relied on circular logic to explain that she was not subject to the law merely because it was a law. But the TCPA is not merely just a federal law. It is a codification of a long history of the right that was recognized to privacy at common law. And Congress in 1991 merely articulated the fact that certain types of telephone intrusions, including pre-recorded voice and artificial voice phone calls without consent, express written consent, is such a concrete invasion of the privacy interest that was recognized in common law under a long history in our precedence. Now, there are no cases that the government cites that deal with this issue. They don't deal with any favorable cases on scope of employment. The case that the lower court relied on in dismissing this case actually should have cut in plaintiff's favor. Campbell-Ewing v. Gomez was a scope of employment case where the – actually in the exact posture that we're in right now, where the lower court dismissed – or I'm sorry, the lower court dismissed the case because the defendant was held to be immune, and then the Ninth Circuit overturned the lower court because the lower court failed to analyze whether the defendant was acting within the scope of his authorization or authority, which is not the same exact law we're dealing with here. Here, it's a scope of employment authorization under agency principles. But you can see that it cuts in our favor because the Ninth Circuit and the Supreme Court affirmed the Ninth Circuit, overturned the lower court for not analyzing whether any exceptions to the doctrine applied. So with that, we will – I would just request a time for rebuttal, and we would submit.  Thank you. Good morning, Your Honors. And may it please the Court, Michael Keough for Defendant Ampelli, Representative Jackie Speier. Your Honors, this is a narrow question of sovereign immunity under the TCPA. Mr. Cheng's appeal contends that he can bring an individual capacity claim against a member of Congress for violations of the Telephone Consumer Protection Act, but the district court correctly held that because the relief he seeks would run against the sovereign. These are, in reality, official capacity claims to which sovereign immunity applies. Appellant is correct that the two sides talk about different standards, and I think it's helpful to talk about that first. Because the question here was whether or not sovereign immunity would apply to the acts described in the complaint, the correct standard to use was the one that the district court used. That's the one from Acres Bonusing. It's the one from Pennhurst. Is the government the real party in interest? Does this relief run against the sovereign? The test for scope of employment was relevant to the Westfall Act substitution for the state law claims, and, of course, the district court did not exercise jurisdiction over those claims, and Mr. Cheng's appeal does not contest that decision. I think that's right. So why is the – could you get to your real party in interest argument? Of course, Your Honor. There are two reasons here why the government is the real party in interest. The first is the effect that it would have on members' ability to communicate with their constituents, and the second is the effect it would have on the money that's been allocated to Congress, which they're otherwise permitted to spend on unsolicited mass communications, specifically robocalls. As to the first, Representative Speer, it's not disputed, has the ability to communicate with her constituents, and the TCPA has no express language that prohibits the federal government and its officials from using robocalls to engage in their official acts, just like what happened here, a congressional town hall, to inform constituents about coronavirus and congressional updates. If we were to create a rule that an individual member of Congress could be subject to a large financial penalty under the TCPA, the effect of such a rule would be that the federal government, because it has to act through officials, would not be able to do something it's otherwise permitted to do under the TCPA. If Congress intended for this rule to apply to federal officials, it could have said so in the statute, but without that express waiver of sovereign immunity, there's nothing in the statute that indicates that this rule was meant to apply to federal officials. Well, I guess in what sense would the federal government be legally bound by the adverse judgment? That's the test from Lewis v. Clark, right? And certainly it would have an effect on the federal government. I see that. I'm more questioning where you think it would be actually bound in some legal sense to a judgment that says Congressman Speier owes whatever X amount of money for damages here. Yes, Your Honor. I think two points in response. The first is that Mr. Cheng is also seeking injunctive relief, so injunctive relief that prevented a member of Congress in their office from doing something that's otherwise permitted. That may present different issues, but I think he's also acknowledged that's largely, if not totally, moot here. And, Your Honor, I think that concession tells us everything we need to know about whether or not this is an official act. Why isn't it capable of being repeated? Why isn't it capable of coming? Every member of Congress uses this provision. Correct, Your Honor. But the issue here is whether or not Representative Speier individually, not in her official capacity as a member of Congress, but as an individual should be held responsible for complying with the TCPA. Okay. But you have to make a real party and interest argument. Correct. Okay. I'm listening. The first point is as to the Federal Government. I thought you were relying on the injunctive relief to say that if plaintiff were to succeed in this method of communicating with constituents who were enjoined, that the Federal Government would then basically be bearing the foot of the bill or footing the bill. Correct, Your Honor. The injunctive relief would directly apply to the office and the people who are tasked with carrying out, organizing the town hall. But I think the second piece of that is the, it takes us to the Cunningham versus Lester case where they analyzed a similar issue. And in that case, the effect of the judgment, while quite literally they were seeking to have three Federal officials, not contractors, but actual employees of the Department of Health and Human Services, they were the defendants. And the goal was to have them pay the judgment. That was the relief that the plaintiffs sought. And the Fourth Circuit said, look, they might be on the hook for the judgment itself. But if we allow a rule that allows you to put the individuals in their individual capacity on the hook for the judgment, the effect is that the Federal Government won't be able to do something it's otherwise permitted to do because it has to act through people. And those people won't want to take those actions because they don't want to run the risk of that. Even though the TCPA doesn't apply to the Federal Government, they could be the ones who are held responsible. Wouldn't that logic work in Lewis v. Clark? We could say the same thing. The Supreme Court there said tribal sovereign immunity works the same way as regular sovereign immunity. You could say that imposing personal liability on a limousine driver is going to cause a casino run by a tribe not to offer a car service that they're permitted to have. It would have an effect, too. The question is not whether there's going to be some downstream effect. The question is whether the judgment binds the government. Yes, Your Honor. And that's where I think the injunctive relief is relevant here. Even though it might be moot, and admittedly that fact was not before the district court because Representative Speer was in office, at least until the time that the briefing in this case was completed. But because the plaintiff is seeking injunction against the member herself, yes, she's an individual. He seeks the injunctive relief individually. But it would control the office. The office who acts on behalf of the representative wouldn't be able to make the calls that they're otherwise permitted to do. But there is no office anymore. I mean, this isn't like suing the attorney general where the attorney general leaves and we remove his name and we put a new name in his place for whoever his successor is. This is not like suing the office of the congresswoman. And I think, Your Honor, that gets back to the real party and interest question, which is that because Representative Speer is no longer in office, just as the district court noted in its opinion, there's simply no reason for her to organize a constituent town hall about congressional updates but for the fact that she is a member. And that official communication, that's really the key here that makes it different from other cases that might have considered this question, is that she's not making the calls for a re-election campaign. It's not for a personal business interest. You look at the text of the robocall that is in the statute, and it makes clear that she is giving a congressional update. You can watch it on her house.gov website. If you have a question, you should call. But that's basically saying she's doing this within the scope of her office. That's the test the Supreme Court rejected for sovereign immunity in Lewis v. Clark. There may be other defenses here, you know, legislative immunity, qualified immunity. I'm not even sure the statute covers a federal official like this. That's just a 12B6 defense. But the argument here that you're making is sovereign immunity, and that has to comply with Lewis v. Clark. Yes, Your Honor, and we believe that it does, both because of the injunctive part and because those effects, they might not be the most direct effects, but it's the same situation as we had in Cunningham v. Lester, that it controls the ability of those officials to act because they would bear the risk of the financial judgment. The other issue, Your Honors, that's here is leave to amend. And I just want to briefly talk about that because I believe that Mr. Cheng has asked for leave to amend, if the court were to find that this should be remanded to the district court. The district court correctly denied leave to amend because, as it found, any amendment would be futile. And futility, standing alone, can be a reason to deny leave to amend in the first instance. Here, the universe of facts has been alleged in the complaint. We have the text of the robocalls. We have the interactions that Mr. Cheng had with the office. And based on those facts, the district court concluded that these were indeed official capacity acts. The question would be, could Mr. Cheng allege other facts in a new complaint that would take these out of the official capacity realm and put them into an individual capacity situation? And because we already have all the facts there that don't support an individual capacity claim because, as the district court noted, there's simply no reason to organize a telephone town hall for the fact that she is a member of Congress, there wouldn't be any facts that could be alleged that could take us into that individual capacity claim. And I'd also point out that at no point during these proceedings, whether it was the papers below or the briefs here, has Mr. Cheng posited what facts could be alleged that would create an individual capacity claim as opposed to an official capacity one. If Your Honors have no further questions, we'll yield our time. I just want to make sure I understand. You referenced at the top of your argument, but you didn't come back to it, the idea that Congress allows reimbursements specifically for robo calls. Can you elaborate on that? Yes, Your Honor. I think that's another way that the judgment would be felt by the sovereign here. So each congressional office gets money each year that's set aside for them to run their office. It's called the member's representational allowance. And there are rules about what you can spend that money on. And as the district court took judicial notice of the house manual that tells you what you can spend your budget on, and one of the things specifically that's allowed is unsolicited mass communications, specifically robo calls. So this is something that's both allowed for the federal government to do under the TCPA. Even robo calls that violate the TCPA? Is that what the house manual says? Because some robo calls are fine. Your Honor, so long as it's an official communication, the TCPA only is regulating the conduct of what you can do with a robo call once you're covered by the statute. But if the TCPA doesn't apply, which it wouldn't if sovereign immunity applied, if the TCPA doesn't apply, then it creates no rules for those communications. There might be other bodies of law that could control what someone can and can't do with a mass communication as a member of Congress. But the specific claim that's here today is the TCPA, and whether or not this law allows for an individual claim, and there's nothing in the statute that indicates that it does. Thank you, Your Honors. Thank you. We'll hear rebuttal. Thank you so much again for hearing this case, Your Honor. I just want to point out that it was improper to decide this case at the motion to dismiss stage because of what he is – because of what the government just said, because he relied – they attached a manual to a 12B6 motion and said, look, here, we're allowed to do this. First off – Well, let's assume that you got to the summary judgment stage. Why isn't the fact that the manual says, A, town hall is official business, and, B, you can have mass unsolicited calls that are reimbursed by the sovereign? Well, Your Honor – How does that – how does that translate into an individual capacity case? Well, because, Your Honor, we have a big disagreement. Again, my point is that it was premature to dismiss because we have a disagreement over what the manual says. The manual does not allow the conduct that was alleged in this case. Okay? The manual specifically does not allow you to not maintain a do-not-call list. The manual does not allow you to continue robocalling after someone asks you to stop. Right. But what it does say is that those actions are part of official duties because they're reimbursable. So let's assume that there is a violation of that. They're still reimbursable. It's still official capacity actions, aren't they?  My initial thought is that only official actions of the government are covered, and this was not an official action of the government. Well, the call was. Well, Your Honor, the holding of the town hall, there's no doubt, is official. Right. But the manual also says that you can make robocalls, and they're reimbursable by the sovereign. Well, but that's just a – And you're quibbling about what kind of robocalls you can make, but the fact is the question is capacity. In what capacity was the congresswoman acting? And she was, I think, pretty clearly acting in an official capacity. Well, plaintiff believes she was acting outside the scope of her employment, so she's not considered to be acting. What's your most plausible argument that she was acting outside the scope of her employment? Because her behavior was unreasonable and did not satisfy the scope of employment test under agency principles of California or D.C. law, which, again, wasn't decided at all. Your argument that she was unreasonable in calling people to a town hall, since we have students, this is a member of Congress, right, using robocalls to call her constituents to a town hall meeting, and your argument that she was acting outside the scope and course of her employment is that she was not permitted to do that. Or if she was going to do that, she had to keep a do-not-call list. Is that it? Well, yeah. I mean, there's several violations. I mean, she never asked in the first place. Once I wrote a letter on behalf of Mr. Chang asking her to stop, they responded saying that she would stop. Okay, so forgive me for interrupting, but I'm trying to get back to Judge Thomas's question, and I think we're trying to get at your position, which I understand to be that she was not acting within the course and scope of her employment. And what you're telling me is you're giving me a laundry list of reasons why you think that the way she performed her duties may have been unreasonable. That's different. Well, yes, I think there's no way the court could have determined whether the laundry list of activities was reasonable or unreasonable at the pleading stage. And you think the court couldn't have determined that what she was doing was within the course and scope of her duties at the 12b6 stage? Well, no, we think it was not in the course of her employment, and it was not discussed. I asked a different question. Okay. Sorry. All right. So there's a difference between your arguments, which I could take to be a laundry list of reasons you think that she performed her duties unreasonably, right? But I'm trying to get at Judge Thomas's question, which really had to do with your contention that the duties she was performing were outside the course and scope of her job. The duty of holding a town hall was within the course of her job. Okay. And is possibly considered a mandatory. But plaintiff's allegations are focused on her discretionary activities and how she conducted the town halls. And you think she conducted it unreasonably? Yes, Your Honor. At least for purposes of the legal issue here, I don't really see why you're so focused on the scope of her employment, because Lewis versus Clark says that even if you're acting within the scope of your employment, that doesn't necessarily mean it's an official capacity suit. But we could take for granted that she was acting within the scope of her employment and her duties, and it certainly seems like she was. That doesn't really matter. We're looking for real party and interest, right? You know, I think the parties really didn't agree on the standard. What's your position? You seem to be arguing a lot about course and scope. Is that your position, that that's the touchstone for us? Yes. My position is that there's no way that the court could allow this conduct to equal official business without analysis of why that is and whether it was unreasonable to do things that any mere mortal would Your position is that we should look at course and scope? Yes. I think this case cannot be decided without making decisions under agency principles. Thank you so much, Your Honors. Thank you for your arguments. Thank you. Thank you both for your arguments this morning. The case just argued will be submitted. I want to thank my colleagues for this. I officially took senior status last week and became effective, so I shouldn't really be presiding, but my colleagues prevailed on me, and I thank you. It's a good way to go out as a presiding judge. It wasn't really very generous. Judge Thomas knows it. Whoever presides has to take the notes, and I appreciate him doing that.  In the meantime, our law clerks are available to talk to you and take some of your questions, and usually they do a better job than we do, so you should listen to them. With that, we'll be in recess. All rise.
judges: THOMAS, CHRISTEN, BRESS